# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

| | | |
|---|---|---|
| JACK A. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 CH05687 |
| v. | ) | |
| | ) | |
| JOHN H. TIERNEY, SHERMAN C. JONES | ) | Declaratory Relief and |
| and the VILLAGE OF BROADVIEW, | ) | Injunctive Relief Requested |
| ILLINOIS, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Jack A. Kowalski, by his undersigned attorney, Lisa I. Vessey, states the following as his complaint for equitable relief and damages against defendants John H. Tierney, Sherman C. Jones and the Village of Broadview, Illinois:

### Parties And Venue

1.     Plaintiff Jack A. Kowalski is a citizen of the State of Illinois. Plaintiff is a sworn member of the Village of Broadview Fire Department (the "Broadview Fire Department"). Plaintiff currently holds the rank of deputy chief, which is a tested position.

2.     Defendant John H. Tierney is Chief of the Broadview Fire Department. Chief Tierney is a final policy maker for the Broadview Fire Department and a contributing final policy maker for the Village of Broadview.

3.     Defendant Sherman C. Jones is President of the Board of Trustees of the Village of Broadview, Illinois. Village President Jones is a final policy maker for the Village of Broadview.

4.     The Village of Broadview, Illinois is a non-home rule municipal corporation located in Cook County, Illinois.

5.    Venue is proper in this court because the municipal defendant is located in Cook County and the alleged causes of action arise out of plaintiff's employment in this county.

Facts

6.    Plaintiff entered the fire service in 1978 as a fire cadet. After high school plaintiff was employed as a paid on-call firefighter. Plaintiff also worked full-time as a dispatcher. Plaintiff continued his education by participating in state-sanctioned firefighter training and certification programs. Plaintiff became a certified Emergency Medical Technician (EMT), a certified paramedic, and plaintiff also successfully completed the Firefighter II training program. Plaintiff was hired as a full-time firefighter/paramedic in the Broadview Fire Department through a competitive process. Plaintiff became a sworn member of the fire department on May 15, 1986.

7.    Plaintiff further advanced his skills while working for the Village of Broadview. With the consent of the fire chief, plaintiff enrolled in firefighter training programs that were beneficial to plaintiff and the fire department. Plaintiff's professional certifications now include Advanced Firefighter III, Fire Officer I and Fire Officer II. Plaintiff also completed specialty training courses. Plaintiff is certified to perform trench, confined space and collapsed structure extrications and can serve as incident commander or safety officer at such emergencies. Six years ago plaintiff was invited to join the Illinois Task Force Urban Search And Rescue Team. Plaintiff additionally is a certified a haz-mat technician, tank car specialist, haz-mat incident commander and haz-mat safety officer. Plaintiff's multiple qualifications led him to join the Technical Rescue Team and the Hazardous Materials Team for Division 20 (which is comprised

of seventeen suburban fire departments).  In a region known for its industry and railroads, plaintiff's special training is particularly valuable.

8.      Plaintiff received excellent performance reviews from his supervisors, including Chief Tierney, who has been plaintiff's commanding officer for fifteen years.  In 1992, plaintiff received an Award of Excellence from Good Samaritan Hospital after he resuscitated a newborn who had been submerged in a toilet after birth.  Plaintiff received another Award of Excellence in 1997 for administering emergency medical treatment to an unconscious diabetic passenger onboard an airplane during his flight home from vacation.  Other comments and letters praising plaintiff were forwarded to Chief Tierney and the Village administration over the years. Because of plaintiff's ascertained merit and command potential, the Village of Broadview promoted plaintiff to the rank of lieutenant on July 27, 1998.

9.      Mutual aid agreements and other practices in the fire service require the Broadview Fire Department to respond to calls in nearby municipalities.  Plaintiff became well known among the fire departments in Division 20 for this reason.   Fire chiefs and incident commanders report that plaintiff consistently performs assigned tasks on the fire scene with distinct professionalism and, as a training officer, plaintiff has earned respect for his practical knowledge and demonstrated concern for safety.   Plaintiff is so well regarded within the Division that by most accounts, plaintiff is a likely future candidate for chief.

10.     In 2001, the Village of Broadview administered a test for the position of deputy chief, rather than promoting a captain or lieutenant on the basis of the fire chief's recommendation as is the practice in other departments.  Eligible officers had to score well on a written exam and respond properly in simulations conducted by an independent assessment

3

center, among other requirements. Plaintiff placed highest among the competing candidates. On July 16, 2001, the Village of Broadview promoted plaintiff to the rank of deputy chief of the fire department.

11.     The job duties of deputy chief are set forth in Fire Department Rule 302 and Directive 33-4-5. Upon promotion, plaintiff acquired a vested right to be assigned the duties associated with his rank. Both Chief Tierney and plaintiff worked 40-hour weeks and were considered by the Village of Broadview to be management employees.

12.     Lieutenants and captains in the Broadview Fire Department -- who were considered supervisory employees -- worked 24-hour shifts, just like rank and file firefighters. These officers' total weekly hours would ordinarily exceed overtime limits unless adjusted with assigned days off per applicable Fair Labor Standards Act regulations. Even with the adjustments, shift officers in the Broadview Fire Department are occasionally required to work more than the maximum allowable hours. Since 2001, and consistently to the present date, the official policy and practice of the Village of Broadview has been to pay overtime wages to firefighters and officers who work overtime hours, regardless of rank, according to the terms of the collective bargaining agreement (which presently incorporates a limit of 204 hours during any assigned 27-day work period).

13.     The Village also has consistently maintained an official policy and practice of offering holiday pay to captains and lieutenants on the same terms as rank and file firefighters even though these shift officers are not members of the bargaining unit.

14.     Plaintiff performed his job duties as deputy chief with the same dedication and skill that distinguished his earlier career. Over time plaintiff's standing in the fire service grew

4

while Chief Tierney's status diminished. Within Division 20, Chief Tierney acquired a reputation for being somewhat imperious in his dealings with other fire departments. Chief Tierney also annoyed other chiefs and fire officers with his relentless discussions about salary and why he thinks he should be making more money.

15.    Members of the Chief's own department began to resent him because he was absent too often, unless something exciting or newsworthy was happening, and then the Chief tended to advance his own public image rather than paying due credit to his men. Distrust and conflict between the Chief and the department reached extreme levels in 2006 when Chief Tierney failed to prevent twelve firefighters from being laid off. Many believed the Chief did not protect staffing because he coveted his own pay and position over the welfare of firefighters and their families. Plaintiff did not oppose Chief Tierney during the labor conflicts, nor has plaintiff spoken out publicly against the Chief or the Village administration. Plaintiff followed Village policies although plaintiff personally believed that public safety had been compromised by the decision to lower minimum staffing to a mere four men.

16.    Even before the staffing controversy, Chief Tierney had noticeably altered his attitude toward plaintiff. Chief Tierney's inexplicable irritation was a surprise at first but in time it became increasingly apparent that the Chief's curt remarks, brush-offs and petty criticisms were motivated by insecurity. Plaintiff has surmised in retrospect that Chief Tierney is overly concerned with the perceived threat that plaintiff could replace him as chief of the fire department. On information and belief, Chief Tierney fears the professional embarrassment he would suffer if he lost his position to plaintiff. Chief Tierney also has expressed concern that he might lose that portion of his retirement pension which vests only after thirty years of

creditable service. Chief Tierney has said openly that he will do what it takes to keep his job until he reaches his thirtieth year.

17.     Because Chief Tierney has developed an irrational fear of plaintiff, Chief Tierney has purposefully attempted to degrade plaintiff through a series of inappropriate actions that are contrary to the best interests of the fire department and the citizens of Broadview. Chief Tierney has taken away duties associated with plaintiff's rank for no reason other than to impose a more subordinate role upon him. Chief Tierney has repeatedly threatened to reduce plaintiff's compensation without legal authority. The Chief has engaged in disrespectful behavior in the workplace intending to convey disdain toward plaintiff and undermine his standing in the department. Outside the fire station, Chief Tierney has made inappropriate statements regarding confidential personnel policies affecting plaintiff and his compensation. Chief Tierney also has shown poor judgment by publicly declaring that plaintiff will never be allowed to earn as much money as him so long as he is chief, regardless of plaintiff's merit, or the special duties plaintiff performs (as training officer and Village Safety Officer, for instance), or the overtime hours plaintiff actually works.

18.     One particularly harmful display of envy and retaliation occurred in June 2008 when Chief Tierney criticized plaintiff without just cause and placed an unwarranted written reprimand in his personnel file. The situation related to an extra alarm fire in Franklin Park. On information and belief, plaintiff had been specifically requested by dispatch or command to report to the scene as an accountability officer because no other officers were immediately available. Chief Tierney nevertheless chastised plaintiff for leaving the Broadview station.

6

Although the Chief articulated a pretext for the reprimand, the real motive -- as revealed by the Chief's own statement -- was his vain desire to be summoned to big fire instead of plaintiff.

19.     The Broadview Fire Department has in place written policies which prohibit all forms of workplace harassment.  "Discriminatory" harassment is specifically defined, but the policy is not limited to such cases.  The Purpose section provides in pertinent part as follows:

> "All jobs with the fire service are extremely important to the public safety of our community.  It is critical that all employees treat all other employees with dignity and respect.  Because of the unique circumstances present in many fire department jobs, it is the responsibility of each and every employee, supervisor, and manager to make sure that there is no inappropriate behavior occurring in the workplace.  Inappropriate behavior which impacts the workplace, or has the potential to impact the workplace, will not be tolerated."

20.     The anti-harassment policy goes on to describe the authorized complaint procedure.  However, the policy is deficient because it makes no provision for the reporting and investigation of complaints involving the fire chief.  Plaintiff had no recourse to the board of fire and police commissioners because "discipline" not involving time off is not appealable under Village policies.  Plaintiff was effectively barred from pursuing any grievances against Chief Tierney due to unfair limitations in the complaint procedures and the lack of a clearly stated policy prohibiting retaliation by the Chief.

21.     In October 2008, Chief Tierney and the Village of Broadview asked plaintiff to take a temporary detail as a shift officer.  This meant that plaintiff would no longer be working 8-hour days but instead would be assigned to a 24-hour shift.  Plaintiff was told that his deputy chief responsibilities would remain the same.  In reality, however, plaintiff's workload increased due to the greater time commitment and the additional personnel duties associated with being a shift supervisor.

22. Plaintiff felt compelled to accept the reassignment in order to show his loyalty to the Village of Broadview and its citizens. Furthermore, since plaintiff has no desire to leave the fire department, plaintiff also was compelled to endure the involuntary pay cut that went along with the reassignment. The pay reduction results from the fact that plaintiff was now working close to 50 hours each week for the same salary he had earned when he was working only 40 hours per week. To compensate for this, the Village represented to plaintiff that he would receive overtime pay and holiday pay just like the lieutenants and captains who worked 24-hour shifts. Plaintiff also was promised a continuation of his training officer stipend.

23. Plaintiff thereafter received a number of pay vouchers which included earned overtime pay in accordance with Village policies and prevailing law. Plaintiff also received the sum of $1,098.61 as holiday pay for the three holidays remaining in 2008 after his assignment to "B" shift. Even though plaintiff still held the rank of deputy chief, his overtime pay and holiday pay were calculated and remitted in the same manner as such pay for other shift officers. Plaintiff additionally received his $3,000.00 training officer stipend as promised.

24. The official policy of the Village of Broadview regarding holiday pay was revised somewhat in November 2008. Fire officers agreed that the Village could remit holiday pay to them via a single check issued in November rather than issuing two checks in March and November as had been the practice in the past. Plaintiff was still included among the shift officers entitled to receive holiday pay in 2008 according to various fire department memos and other official Village records.

25. The Village of Broadview is required by law to pass its appropriation ordinance in advance of each new fiscal year. On information and belief, the appropriation ordinance for

the current year, which began May 1, 2009, included allocations for plaintiff's salary and holiday pay, as well as for his training officer stipend. On information and belief, the appropriation ordinance also provided for overtime based on a fire department roster that explicitly included plaintiff as a shift officer eligible for overtime pay.

26. On August 20, 2009, Chief Tierney called plaintiff into his office. The Chief closed the door and immediately challenged plaintiff regarding his compensation. While pointing his finger at plaintiff, Chief Tierney stated that "no officer in this department is ever going to make more money than me." Chief Tierney then announced he was going to take away plaintiff's overtime and holiday pay. Plaintiff politely objected, explaining that being on shift meant he was working more hours than before. Chief Tierney replied that he would speak to the Village attorney about reducing plaintiff's compensation. Later that day Chief Tierney indicated to plaintiff that he had not gotten the answer he wanted regarding plaintiff's holiday pay. The Chief reiterated, however, that he was not going to allow plaintiff to collect any more overtime pay regardless of the number of hours worked. Chief Tierney did not disclose whether the Village attorney or the Village president had authorized him to take such action.

27. In May 2009, there was a change in administration following a municipal election. On information and belief, the new administration ratified the previously-approved appropriation ordinance which included allocations for plaintiff's holiday pay and other compensation.

28. Prior to the end of the 2009 calendar year, the fire department was required to send a report to the Village listing the firefighters and officers who were entitled to receive holiday pay and the amounts owed to each. On information and belief, the department's original holiday pay memo, dated November 1, 2009, indicated that plaintiff was entitled to receive

9

holiday pay in the amount of $3,799.36. On information and belief, the November 1 memo was stored electronically in an administrative file intended for official reports.

29.    Four days later, Chief Tierney submitted a different version of the holiday pay memo to the Village Clerk. Plaintiff's holiday pay was not included in the Chief's calculations.

30.    On information and belief, Chief Tierney purposefully removed plaintiff from the holiday pay list knowing that the new administration would not detect the omission nor understand its significance. On information and belief, Chief Tierney acted in his capacity as fire chief with the intent to deprive plaintiff of compensation he had rightfully earned.

31.    On information and belief, Chief Tierney then tried to mislead plaintiff in order to deter plaintiff from pursuing the matter. After the Chief submitted the revised holiday pay memo to the Village Clerk, he left a voice-mail message for plaintiff stating that he was "unsure" whether the Village would approve plaintiff's holiday pay. The truth is that Chief Tierney already knew the Village was not going to issue a check to plaintiff because he had omitted plaintiff from the holiday pay list. Chief Tierney later told plaintiff he was not entitled to holiday pay because of his rank, even though plaintiff had received holiday pay in 2008 as deputy chief and was never notified that he was not eligible to receive the compensation in 2009.

32.    All captains and lieutenants who worked on shift like plaintiff in 2009 received their holiday pay checks on or about November 13, 2009.

33.    On November 15, 2009, Chief Tierney called plaintiff at the fire station to tell him that he had forgotten to submit a memo to the Village Clerk regarding plaintiff's training officer stipend, which was due by the end of the year. During the conversation, Chief Tierney repeated his misrepresentations as to why plaintiff was not going to receive holiday pay.

Plaintiff again explained the difference between working days and working on shift. Chief Tierney replied that the decision had been made, although he did not say by whom.

34.     By coincidence, plaintiff had an opportunity to speak with former Village President Henry Vicenik on November 15, 2009 when Mr. Vicenik visited the fire station to pick up materials relating to a flu clinic sponsored by the Village. Chief Tierney's efforts to reduce plaintiff's compensation were discussed. On information and belief, Mr. Vicenik subsequently notified the Village of Broadview that plaintiff had vested rights that had been established during his administration and that, contrary to Chief Tierney's desires, plaintiff was entitled to receive overtime pay and holiday pay according to official Village policy.

35.     On November 26, 2009, plaintiff was required to work overtime. Plaintiff is informed and believes that the fire department's internal payroll reports for that period showed that plaintiff had worked three overtime hours and was entitled to receive corresponding overtime pay. Plaintiff is informed and believes that Chief Tierney altered the final report to omit plaintiff's overtime pay before submitting it to the Village Clerk. As a result, plaintiff did not receive overtime pay for three overtime hours actually worked.

36.     On December 8, 2009, Mr. Vicenik telephoned plaintiff to inform plaintiff of his discussions with Village personnel. Mr. Vicenik stated that the current administration intended to ignore plaintiff's demands and that plaintiff should seek the advice of counsel. Mr. Vicenik went on to say that based on his experience as Village President, he was fairly certain that Chief Tierney and the Village of Broadview had violated plaintiff's rights under the Illinois Wage Payment and Collection Act and other laws.

11

37.     Plaintiff followed the former president's recommendation and retained counsel in due course.  On December 29, 2009, plaintiff's attorney sent a demand letter to the Village of Broadview requesting payment of plaintiff's overtime pay and holiday pay no later than the next payroll cycle.

38.     An attorney by the name of Philip M. Fornaro responded on behalf of the Village in a letter dated January 8, 2010.  Mr. Fornaro summarily rejected plaintiff's demands.  On information and belief, Mr. Fornaro did not conduct a reasonable investigation before issuing the letter.  On information and belief, a reasonable investigation by counsel would have revealed that official Village policy supported plaintiff's claims and that plaintiff is entitled to receive both overtime pay and holiday pay, regardless of rank, because he was working 24-hour shifts.  More egregious is the sentence in Mr. Fornaro's letter which can only be construed as a threat to plaintiff's continued employment as deputy chief because plaintiff made a claim for payment of compensation he believes in good faith is owed.

39.     Meanwhile, plaintiff received his last pay voucher for the 2009 calendar year.  When plaintiff reviewed the earnings statement that accompanied the voucher he noticed that the Village had remitted the sum of $6,000.00 for his training officer stipend.  Plaintiff is entitled to receive only half that amount for his services as training officer.  Thus, it would appear that the Village overpaid plaintiff by $3,000.00, except that plaintiff had previously asserted a claim for unpaid overtime wages and holiday pay in an amount that exceeds the overpayment.

40.     There is an actual controversy between plaintiff and the Village of Broadview as to whether plaintiff is required to refund the $3,000.00 overpayment or whether plaintiff is entitled to set off the funds against his claim for unpaid overtime wages and holiday pay.

12

41.    Later in January 2010, Village President Jones requested a meeting with plaintiff and Chief Tierney purportedly to discuss plaintiff's duties and compensation as deputy chief. Plaintiff intended to notify the president and the chief during the meeting that the Village had remitted double the amount of his training officer stipend. A meeting was tentatively scheduled but the president cancelled on short notice.

42.    On information and belief, Village President Jones was informed of the substance of plaintiff's wage claims and chose not to meet with plaintiff or take other appropriate action to redress plaintiff's issues because he and Chief Tierney had determined that it would serve their personal or political interests not to afford plaintiff any due process. On information and belief, Village President Jones is the last Village official who could have prevented the pecuniary harm and other deprivations which are the subject of this action. Based on statements made by the Village attorney, further entreaty to Village officials appears futile.

43.    During the pay period ending January 17, 2010, plaintiff was required to work four more overtime hours. The corresponding paycheck did not include any overtime pay.

44.    There is an actual controversy between plaintiff and the Village of Broadview as to whether or not plaintiff is entitled to collect overtime pay for hours worked in excess of the maximum number of hours allowed for fire department shift officers, and this controversy will continue so long as plaintiff is assigned to work 24-hour shifts.

45.    There is an actual controversy between plaintiff and the Village of Broadview as to whether or not plaintiff is entitled to collect holiday pay like lieutenants and captains, and this controversy will continue so long as plaintiff is assigned to work 24-hour shifts.

46.     Plaintiff additionally seeks the protection of this court because Chief Tierney and other powerful actors in the Village of Broadview, including Village President Jones and the Village attorney, have given strong indications that they will retaliate against plaintiff for asserting his rights.

47.     The latest example is Chief Tierney's refusal to authorize plaintiff to attend a Health And Safety Officer training course despite the necessity of having plaintiff receive such training in order to perform his duties as Village Safety Officer.  The close proximity in time between plaintiff's registering a complaint regarding unpaid compensation and the Chief's refusal to permit plaintiff to attend the course compels the inference that Chief Tierney will continue to interfere with plaintiff's employment rights unless a higher authority intervenes.  Since Village President Jones has failed or refused to exercise his official power to redress plaintiff's claims, or even provide due process, plaintiff has no choice but to seek relief from this court.

48.     Plaintiff has suffered pain and injury, loss of income, damage to reputation and emotional distress, all as a result of defendants' illegal conduct.  Plaintiff's damages, exclusive of attorney fees, are estimated to exceed $50,000.00.  Plaintiff additionally requests injunctive relief because defendants' actions are unconstitutional, intentional and contrary to the best interests of the Village, the fire department and the citizens of Broadview.

49.     Because the Village President and the Fire Chief have intentionally violated the Village's strict anti-harassment policies, plaintiff further requests an award of exemplary damages against Chief Tierney and Village President Jones in their individual capacities to punish them for knowingly violating plaintiff's rights, and to deter them and other public officials like them from engaging in similar wrongdoing in the future.

14

## COUNT I
## Violation Of Illinois Wage Payment And Collection Act

50.    Plaintiff incorporates herein by reference paragraphs 1 through 49, above.

51.    The Village of Broadview and plaintiff modified their employment agreement in 2008 when the Village assigned plaintiff to work 24-hour shifts.  According to the parties' revised agreement, plaintiff was and is entitled to receive overtime pay and holiday pay on the same terms as lieutenants and captains who also work 24-hour shifts.  Plaintiff furnished the required consideration by providing excellent employment services to the Village of Broadview from the date of the shift assignment to the present.

52.    The Illinois Wage Payment And Collection Act, 820 ILCS 111/2, defines wages to include the holiday pay plaintiff is claiming.

53.    The Illinois Wage Payment And Collection Act, 820 ILCS 115/2, defines wages to include the overtime pay plaintiff is claiming.

54.    The Illinois Wage Payment And Collection Act, 820 ILCS 115/10, required the Village of Broadview to notify plaintiff in advance of any changes to the terms of his compensation.

55.    The Village of Broadview did not notify plaintiff of any changes to the terms of his compensation for the current fiscal year.

56.    According to the parties' employment agreement, the Village of Broadview was required to pay plaintiff his 2009 holiday pay before the end of the 2009 calendar year.

57.    The Village of Broadview did not remit holiday pay to plaintiff on or before the date payment was required.

15

58.     Plaintiff worked overtime hours during the last pay cycle in 2009. According to the parties' employment agreement, and prevailing law, the Village of Broadview was required to pay plaintiff his earned overtime wages no later than the next regular pay period.

59.     The Village of Broadview did not remit payment of plaintiff's overtime wages on or before the date payment was required.

60.     Plaintiff made a written demand upon the Village of Broadview for payment of specific sums for overtime wages and holiday pay earned as of December 29, 2009.

61.     The Village of Broadview rejected plaintiff's demands.

62.     Plaintiff earned an additional four hours of overtime pay after he submitted his demand to the Village. As before, the Village did not remit payment for these overtime hours.

63.     Plaintiff presently is owed the sum of $3,799.36 for holiday pay.

64.     Plaintiff presently is owed the sum of $320.46 for overtime wages.

65.     Plaintiff is entitled to collect prejudgment interest on the unpaid sums at the legal rate from the date each payment was due to the date of trial pursuant to the Illinois Interest Act, 815 ILCS 205/2.

66.     If plaintiff is adjudged a prevailing party, plaintiff also shall be entitled to an award of his reasonable attorney fees pursuant to the Attorneys Fees In Wage Actions Act, 705 ILCS 225/1.

WHEREFORE, plaintiff requests the entry of judgment in his favor and against the Village of Broadview in the amount of his unpaid compensation, with interest, plus reasonable attorney fees.

16

## COUNT II
### Breach of Contract

67.     Plaintiff incorporates herein by reference paragraphs 1 through 49, above.

68.     The Village of Broadview and plaintiff modified their employment agreement in 2008 when the Village assigned plaintiff to work 24-hour shifts. According to the parties' revised agreement, plaintiff was and is entitled to receive overtime pay and holiday pay on the same terms as lieutenants and captains who also work 24-hour shifts. Plaintiff furnished the required consideration by providing excellent employment services to the Village of Broadview from the date of the shift assignment to the present.

69.     The Village of Broadview did not pay plaintiff all of the compensation owed to him for services actually performed during the 2009 calendar year.

70.     Plaintiff made due demand upon the Village for payment of holiday pay and overtime pay owed as of December 29, 2009.

71.     The Village of Broadview rejected plaintiff's demands.

72.     Plaintiff earned an additional four hours of overtime pay after he submitted his demand to the Village. As before, the Village did not remit payment for these overtime hours.

73.     The Village of Broadview breached its employment agreement with plaintiff by failing or refusing to pay plaintiff all of the compensation to which he is entitled for services performed during the current fiscal year.

74.     Plaintiff has lost income as a result of the Village's breach of contract. Plaintiff's damages as of the date of this complaint, excluding attorney fees, amount to the sum of $4,119.82.

75.     Plaintiff is entitled to collect prejudgment interest on the unpaid sums at the legal rate from the date each payment was due to the date of trial pursuant to the Illinois Interest Act, 815 ILCS 205/2.

WHEREFORE, plaintiff requests the entry of judgment in his favor and against the Village of Broadview in the amount of his damages as proven at trial, including prejudgment interest.

## COUNT III
### Declaratory Judgment

76.     Plaintiff incorporates herein by reference paragraphs 1 through 75, above.

77.     Plaintiff's assignment as a shift officer no longer appears to be temporary.

78.     Although plaintiff maintains the official rank of deputy chief, plaintiff continues to work close to 50 hours each week as a shift officer rather than the 40 hours per week he previously worked when he was assigned to days.

79.     Defendants have given strong indications that they intend to continue to deny plaintiff overtime pay regardless of the number of hours plaintiff is required to work.

80.     Plaintiff therefore seeks a declaration from this court as to his right to receive overtime pay for hours worked in excess of the limits established by law for similarly situated fire officers.

81.     Defendants also have given strong indications that they intend to deny plaintiff holiday pay even though lieutenants and captains who work 24-shifts like plaintiff are entitled to collect holiday pay.

18

82.     Plaintiff therefore seeks a declaration from this court as to his right to receive holiday pay like other shift officers so long as he continues to work 24-hour shifts.

83.     Plaintiff additionally seeks a declaration from this court authorizing him to set off the $3,000.00 overpayment for his training officer stipend against the sums determined to be owed to him for services performed during the current fiscal year.

WHEREFORE, plaintiff requests the entry of judgment in his favor and against the Village of Broadview declaring that plaintiff is entitled to receive overtime pay and holiday pay for so long as he continues to work 24-hour shifts, and further, granting plaintiff permission to apply the funds currently held by him against the amounts owed by the Village of Broadview as determined by this court.

## COUNT IV
## 42 U.S.C. § 1983

84.     Plaintiff incorporates herein by reference paragraphs 1 through 83, above.

85.     The Fourteenth Amendment to the Constitution of the United States guarantees that any deprivation of liberty or property which the Village of Broadview may wish to impose upon plaintiff or any other public employee must be preceded by notice and an opportunity for hearing that is appropriate to the matters at issue.

86.     Plaintiff has a constitutionally-protected property right to receive overtime pay and holiday pay as promised or represented to him by the Village of Broadview when the Village assigned plaintiff to work 24-hour shifts.

87.     Plaintiff has a constitutionally-protected property right to receive overtime pay for hours worked in excess of the limits established by law for similarly situated fire officers.

19

88.     Plaintiff has a constitutionally-protected property interest in being assigned the job duties officially associated with his rank.

89.     Plaintiff has a constitutionally-protected liberty interest in being free from false statements made by the Fire Chief which impugn plaintiff's character and leadership abilities.

90.     Plaintiff has a constitutionally-protected liberty interest in being free from adverse or retaliatory employment actions, including pretextual criticisms and de facto demotions, which are calculated to interfere with plaintiff's protected liberty and property interests.

91.     Defendant Tierney and defendant Jones, as final policy makers, personally participated in deliberate actions taken against plaintiff knowing that they were depriving plaintiff of his protected property and liberty interests without due process. In the alternative, defendant Jones and the Village attorney directed or permitted the Village of Broadview to deprive plaintiff of his protected property and liberty interests with knowledge that plaintiff's employment and constitutional rights were being violated.

92.     On information and belief, all of defendant Tierney's actions against plaintiff were undertaken with actual malice.

93.     Defendant Tierney and defendant Jones displayed deliberate indifference to plaintiff's reasonable requests for corrective action.

94.     As a result of the defendants' unconstitutional conduct, plaintiff has suffered pain and injury, including loss of income and damage to reputation, as well as emotional distress.

95.     Plaintiff's damages, exclusive of attorney fees, are estimated to exceed $50,000.00. If plaintiff is adjudged a prevailing party, plaintiff also shall be entitled to an award of his reasonable attorney fees pursuant to 42 U.S.C. § 1988.

96.     Plaintiff additionally requests injunctive relief because defendants' actions are unconstitutional, intentional and contrary to the best interests of the Village, the fire department and the citizens of Broadview.   The likelihood of future constitutional violations which may occur intermittently or with relatively small damage per occurrence renders customary legal remedies inadequate.

97.     Plaintiff lastly requests exemplary damages because Chief Tierney and Village President Jones violated the public trust by abusing plaintiff without just cause.   Based on defendants' income and the seriousness of their misconduct, plaintiff requests the entry of judgment against defendant Tierney and defendant Jones in their individual capacities in the amount of $50,000.00 each, or in such other amount as the court deems appropriate to punish defendants and deter them and other public officials like them from engaging in similar wrongdoing in the future.

WHEREFORE, plaintiff requests that this court:

A.     Enter an order commanding the Village of Broadview to remit to plaintiff the total amount of his unpaid compensation, with interest;

B.     Enter judgment in plaintiff's favor and against the defendants, jointly and severally, in the amount of plaintiff's other compensatory damages as proven at trial;

C.     Enter judgment in plaintiff's favor and against the Village of Broadview authorizing plaintiff to set off the $3,000.00 overpayment for his training officer stipend against the sums determined to be owed to him;

D.     Enter judgment in plaintiff's favor and against the defendants in the amount of plaintiff's reasonable attorney fees;

21

E.     Enter judgment in plaintiff's favor and against the defendants declaring that plaintiff is entitled to receive overtime pay for hours worked in excess of the limits established by law for similarly situated fire officers;

F.     Enter judgment in plaintiff's favor and against the defendants declaring that plaintiff is entitled to receive holiday pay like other shift officers so long as plaintiff continues to work 24-hour shifts;

G.     Enter judgment in plaintiff's favor and against the defendants declaring that defendants violated plaintiff's constitutional rights;

H.     Enter a final decree and injunction ordering defendants to permanently cease and desist from interfering with plaintiff's constitutional and employment rights;

I.     Enter judgment for punitive damages against defendant Tierney and defendant Jones in their individual capacities; and

J.     Award such other relief as this Court deems just and appropriate.

Respectfully submitted,

Plaintiff JACK A. KOWALSKI

By:  Plaintiff's Attorney

Lisa I. Vessey
LAW OFFICE OF LISA I. VESSEY
One South Dearborn Street, Suite 2100
Chicago, IL  60603
(312) 212-4384
Atty. No. 18032

22