IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JACK A. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 CV 2127 |
| | ) | |
| JOHN H. TIERNEY, SHERMAN C. JONES | ) | Hon. John Z. Lee |
| and the VILLAGE OF BROADVIEW, | ) | Judge Presiding |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Jack Kowalski, by his undersigned attorneys, states the following as his first amended complaint against defendants John H. Tierney, Sherman C. Jones, and the Village of Broadview, Illinois (the "Village"):

### JURISDICTION AND VENUE

1. This Court has original and supplemental jurisdiction over plaintiff's constitutional, civil rights, and closely-related state law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). All parties reside within this district, and the events giving rise to plaintiff's claims occurred within the district.

### PARTIES

3. Plaintiff Jack A. Kowalski is a citizen of the State of Illinois. Plaintiff is a sworn member of the Village of Broadview Fire Department (the "Broadview Fire Department"). Plaintiff currently holds the title of deputy chief, but he no longer is permitted to perform the regular duties associated with his earned rank.

4.      Defendant John H. Tierney is the former Chief of the Broadview Fire Department.  During his tenure as fire chief, defendant Tierney was a final policymaker for the Broadview Fire Department and a contributing final policymaker for the Village of Broadview. Defendant Tierney retired in 2011.  His successor is Thomas Gaertner, who also is a final policymaker for the Broadview Fire Department and a contributing final policymaker for the Village of Broadview.

5.      Defendant Sherman C. Jones is President of the Board of Trustees of the Village of Broadview.  President Jones is a final policymaker for the Village of Broadview.

6.      The Village of Broadview is a non-home rule municipal corporation located in Cook County, Illinois.

## FACTS

7.      Plaintiff entered the fire service in 1978 as a fire cadet.  After high school, plaintiff was employed as a paid on-call firefighter.  Plaintiff also worked full-time as a dispatcher.  Plaintiff continued his education by participating in state-sanctioned firefighter training and certification programs.  In time, plaintiff became a certified Emergency Medical Technician (EMT) and a certified paramedic.  Plaintiff also successfully completed the Firefighter II training program.  Based on his qualifications, plaintiff was hired as a full-time firefighter/paramedic in the Broadview Fire Department through a competitive process.  Plaintiff became a sworn member of the fire department on May 15, 1986.

8.      Plaintiff advanced his skills while working for the Village of Broadview.  With the consent of the Village and the fire chief, plaintiff enrolled in firefighter training programs that were beneficial to him and the fire department, as well as the citizens of Broadview, and

2

the citizens of surrounding municipalities. Plaintiff's professional certifications include, among others, Advanced Firefighter III, Fire Officer I and Fire Officer II.

9.    Furthermore, plaintiff had the initiative to complete specialty training courses. Plaintiff is certified to perform trench, confined space, and collapsed structure extrications. In addition, plaintiff is a certified haz-mat technician, tank car specialist, haz-mat incident commander, and haz-mat safety officer. These certifications enabled plaintiff to join the Division 20 Hazardous Materials Team. Plaintiff also is a member of the Illinois Task Force Urban Search And Rescue Team.

10.    Plaintiff became a leader in the department based on merit. He received numerous commendations and was praised by his superiors and by citizens. In 1998, after successfully completing a testing and evaluation process administered by the Board of Fire and Police Commissioners, plaintiff was promoted to the rank of lieutenant.

11.    In 2001, the Board of Fire and Police Commissioners administered a test for the rank of deputy chief. Eligible officers had to score well on a written exam and respond properly in simulations conducted by an independent assessment center, among other requirements. Plaintiff placed highest among the competing candidates. On July 16, 2001, the Village of Broadview promoted plaintiff to the rank of deputy chief of the fire department.

12.    The rank of deputy chief of the Broadview Fire Department is a tested rank, not an appointed position, established by Village ordinance. By law, deputy chiefs, including plaintiff, cannot be stripped of their rank, or the duties and privileges associated therewith, without just cause as determined by the Board of Fire and Police Commissioners following

3

notice, written charges of misconduct, reasonable investigation, and a hearing before the Board, among other due process requirements.

13.    The job duties of deputy chief are set forth in Fire Department Rules and Directives, and other official Village enactments.  Upon promotion, plaintiff acquired a vested right to be assigned the duties and privileges associated with his earned rank.  The privileges of the rank include, among other things, permanent assignment to a regular 40-hour work week.

14.    From the date of plaintiff's promotion in 2001 to November 2008, both defendant Tierney and plaintiff worked 40-hour weeks and were considered by the Village of Broadview to be management employees.

15.    Since 2001, lieutenants and captains in the Broadview Fire Department were assigned shift supervisory responsibilities based on rank and time in grade (seniority).  These shift officers have always worked 24-hour shifts, just like rank and file firefighters.  From 2001 to the present, the official policy and practice of the Village of Broadview was to pay overtime wages to fire department employees engaged in fire suppression activities, regardless of rank, according to the terms of the extant collective bargaining agreement(s).  The Village of Broadview deliberately created enforceable contractual obligations for lieutenants and captains in order to avoid conflicts with the Fair Labor Standards Act ("FLSA"), and to induce lieutenants and captains to refrain from seeking to form their own collective bargaining unit, as was their right.  Thus, the Village of Broadview publicly declared its adoption of a 27-day work period for all shift employees regardless of rank (which included an obligation to pay overtime wages) consistent with § 7(k) of the FLSA, 29 U.S.C. § 207(k); or in the alternative, the Village of Broadview established such policy by custom and practice.

4

16.     Since 2001, the Village also has consistently maintained an official policy and practice of offering holiday pay to captains and lieutenants on the same terms as rank and file firefighters, even though shift officers were not members of the bargaining unit.

17.     Plaintiff performed his job duties as deputy chief with the same dedication and skill that distinguished his earlier career.  Plaintiff's exemplary service record and earned promotions represent clear recognition by defendant Tierney, the Broadview Fire and Police Commission, and the Village of Broadview that plaintiff performed his job well and was capable of assuming command of the department.

18.     Mutual aid agreements and other practices in the fire service require the Broadview Fire Department to respond to fire and emergency calls in nearby municipalities. Plaintiff became well known among the fire departments in Division 20 for this reason.  Fire chiefs and incident commanders in the Division report that plaintiff has consistently performed command and safety officer tasks with distinct professionalism.  Plaintiff also serves as a training officer for the Division.  As a training officer, plaintiff has earned respect for his practical knowledge and demonstrated concern for safety.  Plaintiff is so well regarded within the Division that by most accounts, plaintiff was and is a deserving candidate for the position of fire chief.

19.     African-American officers in Division 20 are among those who hold plaintiff in high regard.

20.     In or around October 2008, the Village of Broadview asked plaintiff to take a temporary detail as a shift officer because the Fire Department was short-staffed as a result of mismanagement by Chief Tierney.  If plaintiff accepted the offer, it meant that plaintiff would

5

no longer be working 8-hour days but instead would be assigned to a 24-hour shift. Plaintiff was told by the then-Village President, Henry Vicenik, that his deputy chief responsibilities would remain the same. In reality, however, plaintiff's workload would increase due to the greater time commitment and the additional personnel, maintenance, and on-call duties associated with being a platoon shift officer.

21.     The former Village president admitted that he could not legally order plaintiff to accept the temporary detail. Plaintiff nevertheless felt compelled to accept the reassignment in order to show his loyalty to the Village of Broadview and its citizens.

22.     Since plaintiff had no desire to leave the fire department, plaintiff also felt compelled to endure the involuntary pay cut that went along with the reassignment. The pay reduction results from the fact that plaintiff was asked to work close to 50 hours each week for the same salary he had earned when he was working only 40 hours per week. To compensate for this, the Village president promised plaintiff that he would receive overtime pay and holiday pay just like the lieutenants and captains who worked 24-hour shifts. Plaintiff also was promised a continuation of his training officer stipend.

23.     Plaintiff would not have agreed to the reassignment without an express promise that the detail was temporary, and that he would receive overtime compensation and holiday pay like lieutenants and captains. Plaintiff also would not have agreed to the detail without assurances that he would retain the duties and privileges of his rank.

24.     Plaintiff reported for duty on "B" shift in late November 2008. Thereafter, plaintiff received pay vouchers which included earned overtime pay in accordance with Village policies and the express promises made to him. Plaintiff also received the sum of $1,098.61 as

6

holiday pay for the three holidays remaining in 2008 after his assignment to "B" shift. Plaintiff's overtime pay and holiday pay were calculated and remitted in the same manner as such pay for other shift officers. Plaintiff additionally received his $3,000.00 training officer stipend as promised.

25. The Village of Broadview is required by law to pass its appropriation ordinance in advance of each new fiscal year. On information and belief, the appropriation ordinance for fiscal year beginning May 1, 2009 included allocations for plaintiff's holiday pay and training officer stipend. On information and belief, the appropriation ordinance also included a line item for overtime based on a fire department roster that explicitly included plaintiff as a shift officer eligible for overtime pay.

26. In May 2009, there was a change in administration following a municipal election. On information and belief, the new administration, controlled by defendant Jones, ratified the previously-approved appropriation ordinance that included allocations for plaintiff's overtime and holiday pay, and his training officer stipend.

27. On August 20, 2009, plaintiff was called into the chief's office. Defendant Tierney closed the door and immediately challenged plaintiff regarding the amount of his promised compensation. While pointing his finger at plaintiff, defendant Tierney stated that "no officer in this department is ever going to make more money than me." Defendant Tierney then announced he was going to take away plaintiff's overtime and holiday pay. Plaintiff politely objected, explaining that being on shift meant he was working more hours than before. Defendant Tierney replied that he would speak to the Village attorney about reducing plaintiff's compensation. Later that day defendant Tierney indicated to plaintiff that he had not gotten the

7

answer he wanted regarding plaintiff's holiday pay. The Chief reiterated, however, that he was not going to allow plaintiff to collect any more overtime pay.

28.   Prior to the end of the 2009 calendar year, the fire department was required to send a report to the Village listing the firefighters and officers who were entitled to receive holiday pay and the amounts owed to each. On information and belief, the department's original holiday pay memo, dated November 1, 2009, indicated that plaintiff was entitled to receive holiday pay in the amount of $3,799.36. On information and belief, the November 1, 2009 memo was stored electronically in an administrative file intended for official reports.

29.   Four days later, defendant Tierney submitted a different version of the holiday pay memo to the Village Clerk. Plaintiff's holiday pay was not included in the Chief's calculations.

30.   On information and belief, defendant Tierney purposefully removed plaintiff from the holiday pay list knowing that the new administration would not detect the omission nor understand its significance. On information and belief, defendant Tierney acted in his capacity as fire chief with the intent to deprive plaintiff of compensation plaintiff had rightfully earned.

31.   On information and belief, defendant Tierney then tried to mislead plaintiff in order to deter plaintiff from pursuing the matter. After the Chief submitted the revised holiday pay memo to the Village Clerk, he left a voice-mail message for plaintiff stating that he was "unsure" whether the Village would approve plaintiff's holiday pay. The truth is that defendant Tierney knew the Village was not going to issue a check to plaintiff because defendant had already omitted plaintiff from the holiday pay list.

8

32.    All captains and lieutenants who worked on shift like plaintiff received overtime wages and holiday pay according to Village and Fire Department contracts and policy.

33.    On or about November 15, 2009, defendant Tierney called plaintiff at the fire station to tell him that he had forgotten to submit a memo to the Village Clerk regarding plaintiff's training officer stipend, which was due by the end of the year.    During the conversation, defendant Tierney repeated his misrepresentations as to why plaintiff was not going to receive holiday pay.    Plaintiff again explained the difference between working days and working on shift.    Defendant Tierney replied that the decision had been made.

34.    By coincidence, plaintiff had an opportunity to speak with former Village President Henry Vicenik on November 15, 2009 when Mr. Vicenik visited the fire station to pick up materials relating to a flu clinic sponsored by the Village.    Defendant Tierney's efforts to reduce plaintiff's compensation were discussed.    On information and belief, Mr. Vicenik subsequently notified the Village of Broadview that plaintiff had vested rights that had been established during his administration and that, contrary to defendant Tierney's desires, plaintiff was entitled to receive overtime pay and holiday pay according to official Village policy.

35.    On November 26, 2009, plaintiff was required to work overtime.    Plaintiff is informed and believes that the fire department's internal payroll reports for that period showed that plaintiff had worked three overtime hours and was entitled to receive corresponding overtime pay.    Plaintiff is informed and believes that defendant Tierney altered the final report to omit plaintiff's overtime pay before submitting it to the Village Clerk.    As a result, plaintiff did not receive overtime pay for three overtime hours actually worked.

9

36.     On December 8, 2009, Mr. Vicenik telephoned plaintiff to inform plaintiff of his discussions with Village personnel.  Mr. Vicenik stated that the current administration intended to ignore plaintiff's demands and that plaintiff should seek the advice of counsel.  Mr. Vicenik went on to say that based on his experience as Village President, he was fairly certain that defendant Tierney and the Village of Broadview had violated plaintiff's rights under the Illinois Wage Payment and Collection Act and other laws.

37.     Plaintiff followed the former president's recommendation and retained counsel in due course.  On December 29, 2009, plaintiff's attorney sent a demand letter to the Village of Broadview requesting payment of plaintiff's overtime pay and holiday pay no later than the next payroll cycle.

38.     An attorney by the name of Philip M. Fornaro responded on behalf of the Village in a letter dated January 8, 2010.  Mr. Fornaro summarily rejected plaintiff's demands.  On information and belief, Mr. Fornaro did not conduct a reasonable investigation before issuing the letter.  On information and belief, a reasonable investigation by counsel would have revealed that official Village policy supported plaintiff's claims and that plaintiff was and is entitled to receive overtime wages and holiday pay, regardless of rank, because he was working 24-hour platoon shifts.  More egregious is the sentence in Mr. Fornaro's letter which can only be construed as a threat to plaintiff's continued employment as deputy chief because plaintiff made a claim for payment of compensation he believes in good faith was owed.

39.     Defendant Jones and the Village of Broadview subsequently followed through on the threats.  Between January 8, 2010 and the present, plaintiff has been progressively stripped

of his duties as deputy chief. In 2011, the Village of Broadview declared to this Court that plaintiff no longer performed any of the duties of deputy chief.

40.     Before this action was filed, plaintiff had received his last pay voucher for the 2009 calendar year. When plaintiff reviewed the earnings statement that accompanied the voucher he noticed that the Village had remitted the sum of $6,000.00 for his training officer stipend. Plaintiff is entitled to receive only half that amount for his services as training officer. Thus, it would appear that the Village overpaid plaintiff by $3,000.00, except that plaintiff had previously asserted a claim for unpaid overtime wages and holiday pay in an amount that exceeds the overpayment.

41.     There is an actual controversy between plaintiff and the Village of Broadview as to whether plaintiff is required to refund the $3,000.00 overpayment or whether plaintiff is entitled to set off the funds against his claim for unpaid overtime wages and holiday pay.

42.     Later in January 2010, a meeting was scheduled with defendant Jones to discuss plaintiff's duties and compensation as deputy chief. Plaintiff intended to notify the Village president and defendant Tierney that the Village had remitted double the amount of his training officer stipend. The meeting was cancelled on short notice.

43.     On information and belief, defendant Jones was informed of the substance of plaintiff's contract and wage claims, but chose not to meet with plaintiff or take other appropriate action to redress plaintiff's issues because he and defendant Tierney had determined that it would serve their personal or political interests not to afford plaintiff any due process. On information and belief, defendant Jones was and is the controlling Village official who could have prevented the pecuniary harm and other deprivations that are the subject of this action.

44.     Based on statements made by the Village attorney, further entreaty to Village officials appeared futile. Plaintiff filed this action shortly thereafter. Defendants then removed the case to this Court.

45.     Prior to filing this action, plaintiff was ordered to stay away from Village Hall. As a result of obeying the order, plaintiff has had almost no contact with defendant Jones since he was elected to office. Plaintiff is required to interact with other Village employees and citizens as part of his job duties. His relations have always been cordial and professional by defendants' own admission.

46.     After this lawsuit was filed, defendant Tierney attempted to "write-up" plaintiff's job performance. Defendant Tierney eventually abandoned the effort because the conjured criticisms were so obviously pretextual. After defendant Tierney retired, his interests were no longer so closely aligned with the interests of defendant Jones, who had previously controlled the chief's reappointment. Defendant Tierney was then free to disclose the truth. He has since stated that plaintiff should have had his deputy chief duties restored, and also be returned to a 40-hour work week, because plaintiff is competent and his skills were and are needed to serve the best interests of the fire department and the citizens of Broadview.

47.     Defendant Jones knew or should have known that plaintiff's rights were being violated. On information and belief, defendants Jones believed he could overcome plaintiff's claims by making unsupported allegations of racism. Defendant Jones also defamed plaintiff by proclaiming, with malice and reckless disregard for the truth, that plaintiff is a weakling. The physical manifestations of hatred were so visible that defendant Jones had to be taken aside.

48.     Defendant Jones ultimately stated that plaintiff has no future under his administration because: (1) plaintiff is white; (2) plaintiff associates with "racist" white firefighters; and (3) plaintiff is perceived to be a "friend" of the former Village president and an opposition trustee, both of whom also are white.

49.     Months before these revelations were put on the record, plaintiff had submitted an application for the position of Fire Chief for the Village of Broadview. Plaintiff complied with the requirements stated in the public notice that announced the vacancy created by defendant Tierney's retirement. Plaintiff was the most qualified candidate by all objective measurements.

50.     Defendant Jones falsely stated under oath that plaintiff received no consideration because he had not submitted an application. The truth is that plaintiff hand-delivered his resume on December 27, 2011, and received a receipt. On information and belief, plaintiff's visit to Village Hall also was recorded by security cameras.

51.     The Village of Broadview, on the direction of defendant Jones, appointed then-captain Thomas Gaertner to the position of fire chief. On information and belief, Mr. Gaertner had previously created liability for the Village by engaging in inappropriate sexual relations with certain Village employees while on duty. Mr. Gaertner is less qualified than plaintiff for this reason, among others.

52.     At all relevant times, the Broadview Fire Department had in place written policies which prohibit all forms of workplace harassment. The Purpose section provides in pertinent part as follows:

> "All jobs with the fire service are extremely important to the public safety of our community. It is critical that all employees treat all other employees with dignity and

respect. Because of the unique circumstances present in many fire department jobs, it is the responsibility of each and every employee, supervisor, and manager to make sure that there is no inappropriate behavior occurring in the workplace. Inappropriate behavior which impacts the workplace, or has the potential to impact the workplace, will **not** be tolerated."

53. During the pendency of this case, plaintiff has been subjected to numerous acts of retaliation by defendants which include pretextual criticism of plaintiff's job performance, threats to his continued employment, disparaging remarks regarding his family and character, malicious allegations of incompetence and racism, and calculated efforts by counsel to use this litigation as a tool of further abuse.

54. Defendant Jones continues to harbor irrational racial hatred and personal animosity towards plaintiff.

55. Plaintiff has been deprived of his constitutional, contractual, and civil rights under color of law.

56. As a result, plaintiff has suffered pain and injury, loss of income, damage to reputation and emotional distress.

57. Plaintiff's damages, exclusive of attorney fees, are estimated to exceed $100,000.00.

## COUNT I - 42 U.S.C. § 1983 - RIGHT OF ASSOCIATION

58.    Plaintiff incorporates herein by reference paragraphs 1 through 57 as though fully set forth in this paragraph 58.

59.    The First Amendment to the Constitution of the United States guarantees the right of association, subject to certain limitations.

60.    Political affiliation is not a condition of employment for the rank of deputy chief, by defendants' own admission.

61.    Defendant Jones and the Village of Broadview have violated plaintiff's First Amendment right of association by depriving him of the duties and privileges of his earned rank because defendant Jones perceives that plaintiff has associated with persons who are white, or persons who are not politically aligned with defendant Jones and other members of his administration.

WHEREFORE, plaintiff respectfully requests that this Court:

A.    Declare the conduct of defendant Jones and the Village of Broadview to be unlawful and in violation of rights guaranteed to plaintiff under the First Amendment;

B.    Grant a permanent injunction restraining defendant Jones and the Village of Broadview, its officers, successors, and all persons acting with or on behalf of them, including counsel, from engaging in any acts or implementing any policies that would violate or threaten to violate plaintiff's constitutional rights;

C.    Order defendant the Village of Broadview to restore to plaintiff the duties and privileges of plaintiff's earned rank;

D.      Enter judgment in plaintiff's favor and against defendant Jones, in his individual capacity, and the Village of Broadview, in the amount of plaintiff's consequential, compensatory, and special damages as proven at trial;

E.      Award plaintiff his court costs and disbursements, including deposition appearance and transcript fees, and his reasonable attorneys' fees; and

F.      Grant such other and further relief as the Court deems just and equitable under the circumstances.

## COUNT II - 42 U.S.C § 1983 - DUE PROCESS

62.     Plaintiff incorporates herein by reference paragraphs 1 through 57 as though fully set forth in this paragraph 62.

63.     The Fourteenth Amendment to the Constitution of the United States guarantees that any deprivation of liberty or property which the Village of Broadview may attempt to impose upon plaintiff, or any other public employee, must be preceded by notice and an opportunity for hearing that is appropriate to the matters at issue.

64.     Plaintiff has a constitutionally-protected property right to receive overtime pay and holiday pay as promised by the Village of Broadview before he accepted a temporary shift detail.

65.     Plaintiff has a constitutionally-protected property right to receive overtime pay for hours worked in excess of the limits established by law for similarly situated fire officers.

66.     Plaintiff has a constitutionally-protected property interest in being assigned the job duties and privileges associated with his rank, including assignment to a 40-hour work week.

67.     Plaintiff has a constitutionally-protected liberty interest in being free from false statements made by defendant Tierney or defendant Jones which impugn plaintiff's character and leadership abilities.

68.     Plaintiff has a constitutionally-protected liberty interest in being free from adverse or retaliatory employment actions, including pretextual criticisms and de facto demotions, which were and are calculated to interfere with plaintiff's protected liberty and property interests.

69.     Defendant Tierney and defendant Jones, as final policymakers, personally participated in deliberate actions taken against plaintiff knowing that they were depriving plaintiff of his protected property and liberty interests without due process.

70.     In the alternative, defendant Jones and other powerful Village actors, including the Village attorney and litigation counsel, directed or acted in concert with defendant Jones to deprive plaintiff of his protected property and liberty interests with knowledge that plaintiff's employment and constitutional rights were being violated.

71.     Prior to suit, plaintiff was not afforded any process to redress the grievances and deprivations complained of herein.

WHEREFORE, plaintiff respectfully requests that this Court:

A.      Declare defendants' conduct, individually and officially, to be unlawful and in violation of plaintiff's due process rights;

B.      Grant a permanent injunction restraining defendant Jones and the Village of Broadview, its officers, successors, and all persons acting with or on behalf of them, including counsel, from engaging in any acts or implementing any policies that would violate or threaten to violate plaintiff's constitutional rights;

17

C.     Order defendant the Village of Broadview to restore to plaintiff the duties and privileges of plaintiff's earned rank; and if the Village cannot comply, award plaintiff front pay to compensate him for the lost income he has suffered, and will continue to suffer, while assigned to a platoon shift;

D.     Enter judgment in plaintiff's favor and against defendants Tierney and Jones, in their individual capacities, and the Village of Broadview, in the amount of plaintiff's consequential, compensatory, and special damages as proven at trial;

E.     Award plaintiff his court costs and disbursements, including deposition appearance and transcript fees, and his reasonable attorneys' fees; and

F.     Grant such other and further relief as the Court deems just and equitable under the circumstances.

## COUNT III -- BREACH OF CONTRACT

72.     Plaintiff incorporates herein by reference paragraphs 1 through 57 as though fully set forth in this paragraph 72.

73.     Plaintiff and defendant the Village of Broadview entered into a contract in or around November 2008 whereby plaintiff agreed to temporarily provide services to the Village of Broadview as a shift officer in consideration of the Village's promise that plaintiff would receive overtime pay and holiday pay.

74.     Plaintiff performed as promised.  The Village of Broadview did not.

75.     The Village of Broadview breached its contract with plaintiff.

76.     The Village of Broadview breached the contract in bad faith.

18

77.     Plaintiff has suffered damages as a result of defendant's breach of contract and the covenant of good faith and fair dealing that accompanies the contract.

WHEREFORE, plaintiff respectfully requests that this Court:

A.     Declare that defendant the Village of Broadview and plaintiff entered into a binding contract; or in the alternative, that the Village is estopped from repudiating the promises made to plaintiff on equitable grounds;

B.     Declare that the Village of Broadview breached its contract with plaintiff in bad faith;

C.     Enter judgment in plaintiff's favor and against the Village of Broadview in the amount of plaintiff's actual, consequential, and special (litigation) damages as proven at trial;

D.     Award plaintiff his court costs and disbursements, including deposition appearance and transcript fees, and any necessary expert witness fees; and

E.     Grant such other and further relief as the Court deems just and equitable under the circumstances.

## COUNT IV - ILLINOIS WAGE PAYMENT AND COLLECTION ACT

78.     Plaintiff incorporates herein by reference paragraphs 1 through 57 as though fully set forth in this paragraph 78.

79.     The Illinois Wage Payment And Collection Act, 820 ILCS 115/2, defines wages to include the overtime pay plaintiff is claiming.

80.     The Illinois Wage Payment And Collection Act, 820 ILCS 111/2, defines wages to include the holiday pay plaintiff is claiming.

19

81.    The Illinois Wage Payment And Collection Act, 820 ILCS 115/10, required the Village of Broadview to notify plaintiff in advance of any changes to the terms of his compensation.

82.    The Village of Broadview at no time notified plaintiff of any official changes to the terms of his compensation as established by ordinance, contract, and custom and practice. After this lawsuit was filed, the Village of Broadview indicated by implication that it intends to deprive plaintiff of his earned overtime pay and holiday pay.

83.    According to the parties' employment agreement, the Village of Broadview was required to pay plaintiff overtime pay and holiday pay.

84.    Plaintiff has worked overtime hours and has earned holiday pay. The Village of Broadview has failed and refused to remit payment of plaintiff's overtime wages and holiday pay on or before the dates required.

85.    Plaintiff made written demands upon the Village of Broadview for payment of specific sums for overtime wages and holiday pay.

86.    The Village of Broadview rejected plaintiff's demands.

87.    Further demand is futile.

88.    Plaintiff is entitled to collect prejudgment interest on the unpaid sums at the legal rate from the date each payment was due to the date of trial pursuant to the Illinois Interest Act, 815 ILCS 205/2.

89.    If plaintiff is adjudged a prevailing party, plaintiff also shall be entitled to an award of his reasonable attorney fees pursuant to the Attorneys Fees In Wage Actions Act, 705 ILCS 225/1.

WHEREFORE, plaintiff requests the entry of judgment in his favor and against the Village of Broadview in the amount of his unpaid compensation, with interest, plus an award of reasonable attorneys' fees.

## COUNT V - 42 U.S.C. § 1983 - RETALIATION

90.     Plaintiff incorporates herein by reference paragraphs 1 through 89 as though fully set forth in this paragraph 90.

91.     Plaintiff has asserted meritorious contractual and constitutional claims in good faith both prior to and during this lawsuit.

92.     Since January 2010, the intensity of defendants' retaliation has increased, often in proximity to events that were adverse to defendants' express or disguised agendas.

93.     Plaintiff has not harmed the interests of the Village of Broadview or its citizens by asserting his contractual and constitutional rights.

94.     To the contrary, the best interests of the citizens of the Village of Broadview would be served if plaintiff's contractual and constitutional rights are vindicated.

95.     Defendants have retaliated against plaintiff without legal or just cause solely because plaintiff has asserted his contractual and constitutional rights.

96.     Defendants knew or should have known that their actions were unjustified and unlawful.

97.     But for defendants' unlawful actions and retaliation, plaintiff would currently be chief of the Fire Department.

98.     Plaintiff has suffered pain and injury, loss of income, damage to reputation and emotional distress as a result of defendants' unlawful conduct.

21

99.    Plaintiff's damages, exclusive of attorney fees, are estimated to exceed $100,000.00.

100.    Plaintiff, as the prevailing party, is entitled to recover court costs and reasonable attorneys' fees pursuant to statute.

WHEREFORE, plaintiff respectfully requests that this Court:

A.    Declare defendants' retaliatory conduct to be unlawful and in violation of rights guaranteed to plaintiff under the Constitution of the United States, and state law;

B.    Grant a permanent injunction restraining defendant Jones and the Village of Broadview, its officers, successors, and all persons acting with or on behalf of them, including counsel, from engaging in any acts or implementing any policies that would violate or threaten to violate plaintiff's constitutional, contractual, and civil rights;

C.    Order defendant the Village of Broadview to restore to plaintiff the duties and privileges of plaintiff's earned rank;

D.    Enter judgment in plaintiff's favor and against defendant Tierney and defendant Jones, in their individual capacities, and the Village of Broadview, in the amount of plaintiff's consequential, compensatory, and special damages as proven at trial;

E.    Award plaintiff front pay equal to the difference between plaintiff's compensation as deputy chief and the compensation plaintiff would have earned as Fire Chief but for the unlawful retaliation, as proven at trial;

F.    Award plaintiff his court costs and disbursements, including deposition appearance and transcript fees, and his reasonable attorneys' fees; and

22

G.    Grant such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

/s/ Lisa I. Vessey
Plaintiff's Lead Attorney

Lisa I. Vessey
LAW OFFICE OF LISA I. VESSEY
216 S. Jefferson Street, Suite 101
Chicago, IL 60661
(312) 902-7115

Dennis A. Giovannini - Trial Counsel
GIOVANNINI & OLSHANSKY
216 S. Jefferson Street, Suite 101
Chicago, IL 60661
(312) 902-3344

## Certificate of Service

The undersigned, an attorney, hereby certifies that this Motion was served upon defendants' lead attorney, Dominick Lanzito, via facsimile transmission, and to all attorneys of record via ECM, on August 14, 2012.

/s/ Lisa I. Vessey
Plaintiff's Lead Attorney

23